UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MONICA M.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-cv-266 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Monica M., on July 19, 2018. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Monica M., filed an application for Disability Insurance Benefits on December 22, 2014, alleging a disability onset date of September 15, 2013. (Tr. 10). The Disability Determination Bureau denied Monica M.'s application initially on March 13, 2015, and again upon reconsideration on July 21, 2015. (Tr. 10). Monica M. subsequently filed a timely request for a hearing on September 9, 2015. (Tr. 10). A hearing was held on January 23, 2017, before Administrative Law Judge (ALJ) David R. Bruce, and the ALJ issued an unfavorable decision on May 17, 2017. (Tr. 10-24). Vocational Expert (VE) Julie Bose appeared and testified at the hearing. (Tr. 10). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

Monica M. met the insured status requirement of the Social Security Act through March

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

31, 2018. (Tr. 12). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Monica M. had not engaged in substantial gainful activity since September 15, 2013, the alleged onset date. (Tr. 13).

At step two, the ALJ determined that Monica M. had the following severe impairments: bipolar disorder, substance abuse disorder, irritable bowel syndrome, thoracic outlet syndrome, arthritis, and degenerative disc disease of the back. (Tr. 13). The ALJ found that the medically determinable impairments significantly limited Monica M.'s ability to perform basic work activities. (Tr. 13).

At step three, the ALJ concluded that Monica M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 14). The ALJ determined that Monica M. did not manifest clinical signs and findings that met the specific criteria of any listing. (Tr. 14). Specifically, the ALJ considered the criteria for listings 1.02, 1.04, 12.02, and 12.04. (Tr. 14).

The ALJ found that Monica M.'s mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.02 and 12.04. (Tr. 14). In making this finding, the ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.

(Tr. 14). The ALJ indicated that a marked limitation means the ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited, while an extreme

limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 14).

The ALJ determined that Monica M. had mild limitations in understanding, remembering, or applying information; a moderate limitation in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations adapting or managing herself. (Tr. 14-15). Because Monica M.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B criteria was not satisfied. (Tr. 16). Additionally, the ALJ determined that Monica M. did not satisfy the paragraph C criteria. (Tr. 16). The ALJ also noted that no State agency psychological consultant had concluded that a mental listing was medically equaled. (Tr. 16).

After consideration of the entire record, the ALJ then assessed Monica M.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can push and pull as much as she can lift and carry. She can sit six hours in an eight-hour workday. She can stand and/or walk six hours out of an eight-hour workday. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but she can never climb ladders, ropes, or scaffolds. At most, she can perform simple routine tasks and make simple work-related decisions. She can occasionally respond appropriately to supervisors, co-workers, and the public.

(Tr. 16). The ALJ explained that in considering Monica M.'s symptoms he followed a two-step process. (Tr. 17). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Monica M.'s pain or other symptoms. (Tr. 17). Then he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Monica M.'s functioning. (Tr. 17).

3

After considering the evidence, the ALJ found that Monica M.'s medically determinable impairments reasonably could be expected to produce her alleged symptoms. (Tr. 18). However, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 18). The ALJ concluded that the overall record failed to support Monica M.'s allegations as to the disabling nature of her symptoms. (Tr. 18).

At step four, the ALJ found that Monica M. was able to perform her past relevant work as a food packer. (Tr. 24). The ALJ determined that the work did not require the performance of work-related activities precluded by the RFC. (Tr. 24). The ALJ found that Monica M. had not been under a disability, as defined in the Social Security Act, from September 15, 2013 through the date of this decision, May 17, 2017. (Tr. 10-24).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* ***Bates***, 736 F.3d at 1098. A court must affirm an ALJ's

decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past

relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see* ***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability, does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Monica M. has requested that the court reverse the ALJ's decision and award benefits, or in the alternative, remand this matter for additional proceedings. In her appeal, Monica M. has argued that: (1) the ALJ failed to consider her extreme obesity in combination with her other impairments; (2) the ALJ's mental RFC finding lacked substantial evidence; and (3) the ALJ failed to assess her subjective allegations pursuant to SSR 16-3p.

First, Monica M. has argued that the ALJ failed to consider her extreme obesity in combination with her other impairments. The ALJ found that Monica M. had the following severe impairments: bipolar disorder, substance abuse disorder, irritable bowel syndrome, thoracic outlet syndrome, arthritis, and degenerative disc disease of the back. (Tr. 13). The record consistently documented that Monica M. suffered from lumbar degenerative disc disease and osteoarthritis. However, throughout the ALJ's decision, he failed to mention or discuss Monica M.'s obesity, singly or in combination with her other impairments.

Monica M.'s weight fluctuated between 160 pounds to 222 pounds between January of 2014 to March of 2016 and her BMI's ranged from 30.21 to 41.97. (Tr. 733, 769, 834, 990,

6

1073). The record revealed that on March 3, 2016, she weighed 222 pounds and had a BMI of 41.97. (Tr. 1073). Any BMI of 30 or greater is considered obese. SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). "According to SSR 02-1p, an ALJ should consider the effects of obesity together with the underlying impairments, even if the individual does not claim obesity as an impairment." **Prochaska v. Barnhart**, 454 F.3d 731, 736 (7th Cir. 2006); see also **Arnett v. Astrue**, 676 F.3d 586, 593 (7th Cir. 2012) (stating "[a]n ALJ must factor in obesity when determining the aggregate impact of [a claimant's] impairments."). That is so because "[t]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p, 2002 WL 34686281, at *1.

The Commissioner did not dispute that Monica M. was obese during the relevant time period or that the ALJ failed to recognize Monica M.'s obesity in his decision. Rather, the Commissioner contends that the ALJ implicitly considered the medical opinions of the physicians who accounted for it. Specifically, the Commissioner noted that the ALJ relied largely on the opinion of State agency physician, Dr. Brill, who acknowledged Monica M.'s obesity by referencing her body mass index. The Commissioner has indicated that the ALJ also discussed medical reports that noted Monica M.'s height and weight. Furthermore, the Commissioner contends that Monica M. has not established any obesity-related functional limitations beyond those considered by the ALJ.

An ALJ must consider all of the evidence and must explain his decision such that it may be meaningfully reviewed. **20 C.F.R. § 404.1545(a)**. Therefore, if the ALJ thought that Monica M.'s obesity did not result in limitations on her ability to work, he should have explained how he reached that conclusion. See **Arnett v. Astrue,** 676 F.3d 586, 593 (7th Cir. 2012). The ALJ has not done so here. However, the ALJ's failure to explicitly discuss the impact of obesity may be

7

harmless. "[T]his type of error may be harmless when the RFC is based on limitations identified by doctors who specifically noted obesity as a contributing factor to the exacerbation of other impairments." *Pepper v. Colvin*, 712 F.3d 351, 364 (7th Cir. 2013); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (noting that "the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions."). There was no evidence that the medical reports which the ALJ relied on considered Monica M.'s obesity in their assessments or in combination with her other impairments. Rather, the reports only noted Monica M.'s BMI, height, and weight. Therefore, it is not clear from the record that the physicians took Monica M.'s obesity into account, singly or in combination, with her other impairments.

Furthermore, the ALJ found that Monica M. suffered from the severe impairments of arthritis and degenerative disc disease of the back. The records indicated that she experienced knee pain, ankle pain, and chronic low back pain. She testified that she could stand and/or sit for only 10 to 15 minutes. Given that obesity may exacerbate pain and limitations from arthritis affecting weight-bearing joints, the ALJ's failure to address Monica M.'s obesity in combination with these impairments could have impacted the ALJ's RFC finding that she was able to stand and/or walk for six hours per day and sit for six hours per day. SSR 02-1p, 2002 WL 34686281, at *1 (recognizing that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone."); *Barnett v. Barnhart,* 355 F.3d 1065, 1068 (7th Cir. 2004) (noting "[e]ven if Barrett's arthritis was not particularly serious in itself, it would interact with her obesity to make standing for two hours at a time more painful than it would be for a person who was either as obese as she or as arthritic as

8

she but not both."). The ALJ's decision did not reflect that he considered Monica M.'s obesity in combination with her other impairments or that the physicians he relied on accounted for her obesity. Accordingly, the court cannot find harmless error and remand is appropriate.

Next, Monica M. has argued that the mental RFC finding lacked substantial support. "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence—including statements from medical sources about what the claimant can still do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

An ALJ is not required to rely solely on medical opinions to determine the RFC. *Suide v. Astrue,* 371 F. App'x 684, 690 (7th Cir. 2010) (finding that the rejection of the opinion record left an evidentiary deficit because the rest of the record did "not support the parameters included in the ALJ's residual functional capacity determination"); *Schmidt v. Astrue,* 496 F.3d 833, 845 (7th Cir. 2007) (recognizing that an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians). The final responsibility for deciding a claimant's specific work-related or RFC limitations is reserved to the ALJ. *See* **20 C.F.R. § 404.1527(e)(2).**

9

The ALJ determined that Monica M. could perform simple routine tasks, make simple work-related decisions, and occasionally respond appropriately to supervisors, coworkers, and the public. (Tr. 16). In support of the mental RFC finding, the ALJ relied on State agency psychologists, Drs. J. Gange, Ph.D. and Kari Kennedy, Psy.D., who found that Monica M.'s mental impairments resulted in mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace. (Tr. 23). The ALJ gave some weight to their opinions because they were reasonable and well-supported at the time. (Tr. 23). However, the ALJ concluded that in considering subsequent documentation and Monica M.'s testimony she was more limited. The ALJ found that Monica M. had mild limitations in understanding, remembering, or applying information; a moderate limitation in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations adapting or managing herself. (Tr. 14-15).

Monica M. testified that she had difficulty maintaining concentration. In a function report, she indicated that her impairments affected her memory and her ability to concentrate, understand, follow instructions, and complete tasks. (Tr. 292). She further indicated that she could pay attention for approximately 20 minutes. (Tr. 292). Moreover, a neuropsychological evaluation found that Monica M. had mildly to profoundly impaired memory functions, severe impairments in language and visuospatial abilities, and significant depression and anxiety symptomatology. (Tr. 966-67). It further mentioned that she had an inconsistent weakness in her sustained visual attention and prolonged concentration. (Tr. 966-67).

The Commissioner contends that the ALJ's limitations to "simple routine tasks" and "simple work-related decisions" were consistent with Monica M.'s representations about her ability to concentrate and remember. Additionally, the Commissioner contends that the ALJ

10

accounted for Monica M.'s difficulties getting along with others.  The Seventh Circuit has "repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (quoting *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014)); citing *Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009); *see also Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019).  In *O'Connor-Spinner v. Astrue*, the Seventh Circuit held that, in most cases, terms like " 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 620 (7th Cir. 2010).  This is because the ability to learn how to do a task of a certain complexity is not the same as the ability to do the given task over a sustained period of time.  *O'Connor-Spinner*, 627 F.3d at 620.  As the Seventh Circuit repeatedly has explained, "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including for example, over the course of a standard eight-hour work shift." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).  Accordingly, the ALJ's RFC assessment failed to accommodate Monica M.'s limitation in concentrating, persisting, or maintaining pace.

Finally, Monica M. has argued that the ALJ failed to assess her subjective allegations according to SSR 16-3p.  An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong.  *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012).  Nevertheless, an ALJ must explain his evaluation with specific reasons that are supported by the record.  *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).  An ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility."

Under SSR 16-3, the ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at*4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

  (i) The individual's daily activities;

  (ii) Location, duration, frequency, and intensity of pain or other symptoms;

  (iii) Precipitating and aggravating factors;

  (iv) Type, dosage, effectiveness, and side effects of any medication;

  (v) Treatment, other than medication, for relief of pain or other symptoms;

  (vi) Other measures taken to relieve pain or other symptoms;

  (vii) Other factors concerning functional limitations due to pain or other symptoms.

See **20 C.F.R. § 404.1529(c)(3).**

The ALJ determined that Monica M.'s statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 18). Monica M. contends that the ALJ used the

wrong legal standard in evaluating her subjective allegations. She asserts that "not entirely consistent" is not the legal standard; rather, the ALJ must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record. (citing **20 C.F.R. § 404.953(a)**; *Minger v. Berryhill*, 307 F. Supp. 3d 865, 871 (N.D. Ill. 2018)). However, under SSR 16-3p, the ALJ must "evaluate whether the statements are *consistent* with objective medical evidence and the other evidence." SSR 16-3p, 2016 WL 1119029, at *8; *see also* **20 C.F.R. §§ 404.1529(a), 416.929(a).** Therefore, the use of the boilerplate phrase "not entirely consistent" is not, alone, a basis for remand. *See* **Robert v. Berryhill**, 2018 WL 4565385, at *7-8 (C.D. Ill. 2018); *see also* **Parker v. Astrue**, 597 F.3d 920 (7th Cir. 2010).

The ALJ found that Monica M.'s impairments were not as severe as she alleged because her treatment notes indicated that she was non-compliant with taking medications and that she declined an injection in her back. (Tr. 19). An ALJ "will not find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints," and the ALJ must "explain how [he] considered the individual's reasons in [his] evaluation of the individual's symptoms." SSR 16-3p, 2016 WL 119029, at *8. The Commissioner noted that Monica M. suggested her non-compliance was due to forgetfulness, as well as her husband indicated that she often needed reminders to take her medication. However, the ALJ only noted that the treatment notes indicated that she was non-compliant with taking medications. The ALJ did not provide any discussion of why her reasons for non-compliance were unconvincing or were not supported by the record.

Further, Monica M. contends that the ALJ failed to explain which of her symptoms were not entirely consistent with the evidence. The ALJ's indicated that the "impairments [Monica

M.] complains about existed prior to the accident." (Tr. 19). Moreover, the ALJ also indicated that "the evidence generally does not support the alleged loss of function." (Tr. 19). However, the ALJ failed to indicate what parts of Monica M.'s alleged symptoms were or were not supported by the record. An ALJ needs to "evaluate whether [Plaintiff's allegations] are consistent with objective medical evidence and the other evidence," and "explain" which symptoms are found to be consistent or inconsistent with the evidence. SSR 16-3p, 2017 WL 5180304 at *6, *8; *see also* **Zurawski v. Halter**, 245 F.3d 881, 887 (7th Cir. 2001) (remanding where the ALJ failed to "explain the inconsistencies" between a claimant's activities of daily living, his complaints of pain, and the medical evidence).

Lastly, Monica M.'s husband completed a third-party function report. He indicated that Monica M. spent most of the day sleeping or watching television. Furthermore, he indicated that she needed reminders to let the dogs out and take a bath. He reported that she could pay attention only for five to ten minutes at one time and could follow written or spoken instructions only if they were short. The ALJ found that the opinion of Monica M.'s husband was not medically acceptable. Further, the ALJ stated that he had considered the opinion to the extent that it was supported by the medical evidence. (Tr. 23).

When evaluating the weight to assign to a third-party function report, SSR 16-3p states that an "adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2017 WL 5180304, at *7. "Implicit within SSR 16-3p is a requirement that an adjudicator either assign appropriate weight to a Third Party Function Report or indicate how that report is inconsistent with either the plaintiff's statements or the overall record." **Hopkins v. Berryhill,** 2019 WL 1417255, at *2 (N.D. Ind.

14

2019). The Commissioner failed to address Monica M.'s argument that the ALJ's rejection of the third-party function report completed by Monica M.'s husband was in violation of SSR 16-3p and that the ALJ did not explain which parts of the function report he accepted or rejected. *See* ***Dogan v. Astrue***, 751 F. Supp. 2d 1029, 1042 (N.D. Ind. 2010) (collecting 7th Circuit district court cases holding that the Commissioner's failure to address one of a claimant's argument amounts to a waiver of her right to do so). Accordingly, on remand that ALJ should assess Monica M.'s subjective allegations pursuant to SSR 16-3p.

Monica M. has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." ***Allord v. Astrue***, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. ***Briscoe v. Barnhart***, 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 10th day of October, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge